RECEIVED

OCT - 5 2017

U.S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

# IN THE U. S. DISTRICT COURT OF MISSOURI
## THE EASTERN DISTRICT OF MISSOURI

[A security *15 U.S.C. – UCC 1-304]

Wilma M. Pennington-Thurman          Re: Wilma Pennington-Thurman 09-46628-399

Debtor/Plaintiff

v.                                                          DEMAND FOR JURY TRIAL

U.S.A., U.S., Inc, United States Bankruptcy Court Eastern District of Missouri
U. S. Attorney General Jeff Sessions
Defendant

Re: Debtor Wilma Pennington-Thurman Filing An Adversary Complaint Pursuant to
F.R.B.P. 7001 (1) (6) and Rule 4007 (b) Determination of Dischargeability of Debt

**Article I Bankruptcy Court Eastern District of Missouri Violated a Congressionally Created Right that Debtor/Plaintiff Wilma Pennington-Thurman can have an Article III Court hear Final Determination over "Private Right Claims" of her 2009 Bankruptcy creating Bankruptcy fraud-conspiracy**

COMES NOW, Debtor/Plaintiff Wilma M. Pennington-Thurman ("Debtor/Plaintiff Pennington-Thurman") files this Adversary Complaint pursuant to Federal Rules of Bankruptcy Procedure (F.R.B.P.) 7001 (1) (6) that the U. S. Bankruptcy Court Eastern District of Missouri has violated Debtor/Plaintiff Pennington-Thurman's Constitutional Rights to have "Private Right Claims" in her 2009 Bankruptcy Case heard before an Article III Court.

In this Adversary Complaint Debtor is objecting to the dischargeability of debt to Bank of America, N. A. (BANA) pursuant to F.R.B.P. 4007 (b) for fraud upon the court by BANA.

Debtor Wilma Pennington-Thurman accuses Bank of America, N. A. of intentionally and maliciously harming Debtor and unlawfully taking her property. Real property located at 8722 Partridge Ave, St. Louis, Missouri 63147.

Debtor Wilma Pennington-Thurman accuses The Bankruptcy Trustee David A. Sosne and his Attorney Brian J. LaFlamme along with Attorneys for Bank of America, N. A. in 2009,

Allen D. Allred, Christopher M. Hohn and Seth A. Albin with malicious intent to harm Debtor Wilma Pennington-Thurman and taking her personal property that included her Private Right Claim to $150,000.00 and converting it into an unlawful $12,500.00. Attorney David M. Unseth for Bank of America, N. A. in 2013 and on objection for Bank of America, N. A. in 2016.

Debtor Wilma Pennington-Thurman accuses The Bankruptcy Judge, Barry S. Schermer of harming Debtor by approving a settlement agreement called a "Compromise and Settlement" without the final determination of an Article III Court.

This Adversary Complaint is also to determine nondischargeability of debt to Bank of America, N. A.

Bankruptcy Rule 4007 (b), which provides that a complaint to determine nondischargeability may be filed "at any time," which is an applicable rule for this case and Debtor ask the court to apply Fed. R. of Civ. Procedure 15 (c) (1) (A) (B) Relation Back of Amendments to October 8, 2009.

Amendment – Debtor seeks Congressionally Created Right to have an Article III Court hear Final Determination over Private Right Claims of 2009 bankruptcy to determine if "2009 State Cases" are property of Debtor's Bankruptcy Estate. Vacate judgment of May 17, 2010 to approve settlement agreement to dispose of $150,000.00.

Amend complaint filed January 29, 2016 in U. S. Bankruptcy Court Eastern District. Complaint should be pursuant to F.R.C.P. Rule 60 (d) (3) in "Motion to Reopen Bankruptcy Case."

Vacate Judgment of February 25, 2016, where Judge Barry S. Schermer denied Debtor's motion to reopen her case. Bankruptcy Judge Schermer sits on the Bankruptcy Appellate Panel

2

where Debtor appealed her case.

## BACKGROUND

On July 10, 2009, Debtor/Plaintiff Wilma Pennington-Thurman filed a petition for Chapter 13 bankruptcy in The U. S. Bankruptcy Court Eastern District of Missouri Eastern Division. On July 13, 2009 Debtor/Plaintiff filed a single count "Petition for Fraudulent Representative as to Title to Property" against Bank of America, N. A. ("BANA") in Circuit Court of the City of St. Louis, State of Missouri. On the same day Plaintiff filed another single count "Petition, Affidavit and Complaint in Wrongful Foreclosure" against BANA. Case No. 0922-CC08255 and Case No. 0922-CC08256. ("2009 State Cases") Plaintiff was pro se in both Causes of Action and in her Bankruptcy Case.

Bank of America, N. A. did not answer the summons served in Getsville, New York on July 31, 2009

On September 14, 2009, the Circuit Court of St. Louis entered a default judgment in favor of Plaintiff and against BANA for $150,000.00.  On October 8, 2009 Plaintiff converted her bankruptcy case to a Chapter 7 proceeding and David A. Sosne was appointed by the U. S. Trustee and the Bankruptcy Court as the Chapter 7 Trustee to take charge of Debtor Wilma Pennington-Thurman's Bankruptcy Estate.

On December 10, 2009, BANA filed a motion to set aside the default judgment and a hearing was held in Circuit Court. Circuit Court granted BANA's motion to Set Aside the Default Judgment December 10, 2009. Bank of America, N. A. and Trustee Sosne proceeded to file a Joint Motion to have Debtor's 2009 State Cases dismissed and a "Compromise and Settlement" of the "2009 State Cases". Settlement filed May 17, 2010.

3

There was a hearing on April 8, 2013 on Debtor/Plaintiff's Motion to Reopen her bankruptcy case. Bank of America had violated the Discharge Injunction pursuant to 11 U.S.C. 727 . Motion denied.

On January 29, 2016 Debtor/Plaintiff filed her third Motion to Reopen her bankruptcy case with the U. S. Bankruptcy Court. It was filed under F.R.C.P. Rule 60 (b) (2) (3). Debtor/Plaintiff is amending Rule 60 to correct filing to F.R.C.P. Rule 60 (d) (3). (d) Other Powers To Grant Relief. This rule does not limit a court's power to: (3) set-aside a judgment for fraud on the court.

Fed. R. Civ. P. 60 (b) contains two provisions for fraud. The first, for "plaint" fraud, mandates that a motion be made within a year of the entry of judgment or order. The second, for fraud upon the court, is contained in the savings clause and has no limitation. See Chambers v. NASCO, Inc., 501 U. S. 32, 111 S. Ct. 2123, 2132, 115 L. Ed. 2d 27 (1919).

The U. S. Supreme Court recognizes a court's inherent power to grant relief, for after-discovered fraud, from an earlier judgment regardless of the term of its entry. (quoting Hazel-Atlas Glass Co. v. Hartford-Empire Co. 322 U. S. 238, 244, 64 S. Ct. 997, 88 L. Ed. 1250 (1944).

## CONGRESSIONALLY CREATED RIGHT

The core/non-core division in the 1984 Bankruptcy Act was intended to move final adjudicative authority over proceedings involving "public rights" to the Article I bankruptcy courts, while retaining matters not at the "core" of the Congressionally-created right to a bankruptcy discharge (i.e., claims involving "private rights") to the Article III Courts for final determination. In re Coudert Bros. LLP, 2011 WL 5593147.

4

The U. S. Supreme Court held that "Congress did not altogether succeed in its goal: Some claims, though denominated 'core' under the statute, nevertheless involve only private rights, which preclude the Bankruptcy Court from finally adjudicating them" In re Coudert Bros. LLP, at *6. Debtor/Plaintiff asks for special permission to have the District Court to handle this complaint for this complaint is against the Bankruptcy Court Eastern District of Missouri and for its handling of Debtor's 2009 bankruptcy case. F.R.B.P. 9027 (a)

Plaintiff's motion to reopen her bankruptcy case for "Fraud Upon The Court" and "Motion To Proceed In Forma Pauperis" was denied February 25, 2016 in case 09-46628-399.

Judge Schermer stated under (a) Preclusion, pg. 5, that "This matter amounts to yet another attempt by the Debtor to attack the propriety of my approval of the settlement, in her effort to revive the dismissed Missouri Lawsuits. In Her endless mission to do so, the Debtor seeks access to this Court to stage an improper collateral attack on previous rulings."

The Missouri Lawsuits ("2009 State Cases") were improperly applied to Debtor/Plaintiff's bankruptcy estate and the court allowed the cases to be dismissed for an exchange from a $150,000.00 default judgment to $12,500.00 settlement of the 2009 State Cases. The cases were bundled into a settlement agreement called "Compromise and Settlement" whereas Trustee David A. Sosne and Bank of America, N. A. conspired to make a deal that was approved by Judge Schermer on May 17, 2010. Judge Schermer's knowledge that the Compromise and Settlement was to be recommended to the district court undermined the workings of the adversarial process itself and amounted to bankruptcy fraud-conspiracy.

Plaintiff has filed three motions to reopen her bankruptcy case, two with the Bankruptcy Court Eastern District of Missouri, April 8, 2013 and January 29, 2016. Both denied by the same

Judge with the same bankruptcy court. The third was June 1, 2015 in District Court E.D. of Missouri in case 04:15-CV-00381-RLW. There was no recognition of that motion to reopen.

Judge Schermer stated in his order in the second motion to reopen the case, filed February 25, 2016, pg. 4, [1. Whether Relief Would Be Forthcoming to Debtor]:

"I first consider "whether it is clear at the outset that no relief would be forthcoming to the debtor by granting the motion to reopen." Pennington-Thurman, 499 B.R. at 331 (citing Wilson, 492 B.R. at 695) (motion to reopen properly denied where purpose was to pursue alleged violation of discharge injunction that was completely lacking in merit)" The Transcript disputes this statement from the April 8, 2013 hearing. (See attached Transcript, Exhibit A) For the record Debtor/Plaintiff's bankruptcy case is comprised of fraud and conspiracy.

"Whether sufficiently specific facts are alleged in any case must ultimately be determined on a case-by-case basis. We are mindful that "[c]onspiracies are by their nature usually clandestine. It is unlikely that a plaintiff in a conspiracy case will be able to provide direct evidence of a conspiratorial agreement. Thus such evidence is not necessary to prove that a civil conspiracy existed." Sparkman v. McFarlin, supra, 601 F. 2d at 278 n.19. Accordingly, depending upon the complainant may or may not be in a position to allege with precision the specific facts giving rise to the claim." White v. Walsh, 649 F. 2d 560 (1981)

### Dischargeability of Debt

In Chapter 7 cases converted from Chapter 13, Plaintiff's 2009 State Cases are not the property of her bankruptcy estates. (See Compromise and Settlement approved by the Bankruptcy Court May 17, 2010, Doc # 68). If the causes of action arose after the Chapter 13 case was filed, but before it was converted to Chapter 7, it would not be property of the Chapter

6

7 bankruptcy estate. A Chapter 7 Estate does not include the wages a debtor earns or the assets she acquire after the bankruptcy filing. 11 U.S.C.A. 541 (a) (1): 11 U.S.C. 348 (f) (1); Harris v. Viegelahn, 135 S. Ct. 1829 (May 18, 2015). Shielding a Chapter 7 debtor's post-petition earnings from creditors enables the "honest but unfortunate debtor" to make the "fresh start" the bankruptcy code aims to facilitate. 11 U.S.C.A. 541 (A) (1) (quote from Harris v. Viegelahn, id)

The fact that DebtorPlaintiff Pennington-Thurman appealed the reopening of her bankruptcy case to the Bankruptcy Appellate Panel and discovered the Bankruptcy Judge, Judge Barry S. Schermer also sits on the Bankruptcy Appellate Panel does not provide Debtor due process of the law. There is a conflict of interest. The Order filed March 22, 2016 does not have the names of the Three Judge Panel denying Debtor's motion to reopen and to proceed in forma pauperis (See attached Order, Exhibit B)

### Rule 6 of Federal Rules of Appellate Procedure – Appeal in a Bankruptcy Case

(a) Appeal From a Judgment, Order, or Decree of a District Court Exercising Original Jurisdiction in a Bankruptcy Case. An appeal to a court of appeals from a final judgment, order, or decree of a district court exercising jurisdiction under 28 U.S.C. 1334 is taken as any other civil appeal under these rules.

(b) Appeal From a Judgment, Order, or Decree of a District Court or Bankruptcy Appellate Panel Exercising Appellate Jurisdiction in a Bankruptcy Case.

(1) Applicability of Other Rules. These rules apply to an appeal to a court of appeals under 28 U.S.C. 158 (d)(1) from a final judgment, order, or decree of a district court or bankruptcy appellate panel exercising appellate jurisdiction under 28 U.S.C. 158(a) or (b), but with these qualifications:

7

(A) Rules 4 (a) (4), 4 (b), 9,10,11, 12(c), 13-20, 22-23, and 24(b) do not apply;

(B) The reference in Rule 3(c) to "Form 1 in the Appendix of Forms" must be read as a reference to Form 5;

(C) When the appeal is from a bankruptcy appellate panel, "district court," as used in any applicable rule, means "appellate panel"; and

(D) In Rule 12.1 "district court" includes a bankruptcy court or bankruptcy appellate panel.

A Bankruptcy Appellate Panel (BAP) is authorized by 28 U.S.C. 158 (b) to hear, with the consent of all parties, appeals from the decisions of the United States bankruptcy courts in their district that otherwise would be heard by district courts, but only those districts in which the district judges authorize appeals to BAPs. BAPs typically sit as three-judge panels composed of bankruptcy judges appointed from the circuit's districts, with the restriction that no judge may participate in an appeal arising from that judge's own district.

That did not happen in my appeal. Judge Schermer dismissed Debtor/Plaintiff's appeal and Motion to proceed in forma pauperis.

"Because an appellate panel's deliberations are generally confidential, it is neither possible nor productive to inquire whether the jurist in question might have influenced the views of his or her colleagues during the decision making process." Williams v. Pennsylvania, 136 S. Ct. 1899, 579 U.S. __, 195 L. Ed. 2d 132 (2016) Williams is about recusal of a judge from a case.

8

**Judge Schermer Admits He Ruled on the Settlement without Recommendation to an Article III Court.**

Judge Shermer stated under (a) Preclusion, pg. 5, in the February Order, that "This matter amounts to yet another attempt by Debtor to attack the propriety of my approval of the settlement, in her effort to revive the dismissed Missouri Lawsuits.." Judge Shermer admits he approved the settlement agreement ("Compromise and Settlement")

The settlement was to be recommended to an Article III Court for an Article III Judge's determination. The "2009" State Cases" and the Default Judgment were "Private Right Claims."

In Stern v. Marshall, 131 S. Ct. 2594, the question is whether litigants could consent to a bankruptcy courts determination of such matters, and whether bankruptcy courts could hear such matters at all, if only to submit proposed findings and recommendations only in connection with non-core matters, not core matters subject to de novo review and the entry of a final judgment by the district court.

The U. S. Supreme Court in Stern held that bankruptcy judges were constitutionally prohibited from entering final judgments on such matter, ie, state law breach of contract or tort claims that do not "stem from the bankruptcy itself" or "necessarily" resolve a creditor's proof of claim. Rather such matters are reserved solely for Article III Judges, ie., federal district court judges.

Stern demonstrates that the constitutional question is not congruent with the text of the bankruptcy statute. That matters for Article III purposes-and so the question that must be asked in any challenge to the Bankruptcy Court's authority to make final adjudications-is whether the claim to be adjudicated involves a "public" or a "private" right. If the latter, Congress cannot

9

vest final adjudicative power in the Bankruptcy Court consistent with Article III. Stern, 131 S. Ct. at 2594; Marathon Pipe Line Co., 458 U.S. at 50, 102 S. Ct. 2858 73 L. Ed. 2nd 598 (1982).

Moreover, Stern confirmed the Marathon plurality's statement that, "even with respect to matters that arguably fall within the scope of the 'public right' doctrine, the presumption is in favor of Art. III courts." Stern. 131 S.Ct. at 2618 (citing 458 U.S. at 69, n. 23, 77, n. 29 (plurality opinion)).

The U. S. Supreme Court in Wellness International Network, Ltd, et al v. Sharif 727 F.3d 751 (2015) strengthened the scope of bankruptcy court authority by ruling that a bankruptcy judge may hear and finally determine so-called "stern claims" claims that bankruptcy judges are constitutionally prohibited from finally determining despite specific statutory authorization to do so – as long as the parties to the proceeding knowingly and voluntarily consent.

In the Bankruptcy Court's order of May 17, 2010 to approve the Compromise and Settlement it states, "An objection was filed by the Debtor, Wilma Pennington-Thurman". I never consented to the Compromise and Settlement. It should have been recommended to the District Court for a final judgment. (157 (c) (1)) Exec. Benefits Ins. Agency v. Arkison, 573 U. S. __ (2014)

Rule 4007 Determination of Dischargeability of a Debt

Debtor Wilma Pennington-Thurman's debt to Bank of America, N.A. was discharged among conspiracy, bias attitudes, displayed prejudice, violations of the U. S. Bankruptcy Code and Congressionally Created Right. This bankruptcy case should be reopened to determine the accountability of all parties and relate back pursuant to Fed. R. Civ. P. 15 (c) (1) (A) (B) to October 8, 2009.

10

The purpose of straight bankruptcy under Chapter 7 is for a debtor to obtain a "fresh start" free from creditor harassment and free from worries and pressure of too much debt (H.R. Rep. No. 595, 95th Cong., 1st Sess, p. 125 and S. Rep. No. 989, 95th Cong., 2nd Sess., p. 6) quote from In re Williams 7 B.R. 234 at 236. Debtor Wilma Pennington-Thurman has been deprived of that

Opportunity for seven years as a result of persistent and prolonged violations of the bankruptcy code.

If a judge is biased or prejudiced for or against a party or attorney, he cannot be fair and impartial in deciding the case. A party or Attorney who believes such bias or prejudice exists must prove it with admissible evidence, and cannot base this belief on mere suspicion.

"A court of bankruptcy is a court of equity seeking to administer the law according to its spirit and not merely by its letter." Johnson v. Norris, 190 F. 459 (5th Cir. 1911) "Equitable principles are a guiding factor in all bankruptcy matters." In re Atlas Sewing Centers, Inc., 437 F. 2d 607, 615 (5th Cir. 1971) quotes from In re Williams 7 B.R. 234 (1980)

Rule 4007 (b) Time For Commencing Proceeding Other Than Under 523 (c) of the Code.

A complaint other than under 523 (c) may be filed at any time. A case may be reopened without payment of an additional filing fee for the purpose of filing a complaint to obtain a determination under this rule.

Because of the Bankruptcy Court's judgment to approve the Compromise and Settlement without recommendation, Debtor Wilma Pennington-Thurman has not received the "fresh start" guaranteed by the filing of a bankruptcy. Marrame v. Citizens Bank of Mass., 549 U.S. 365, 367

127 S. Ct. 1105, 166 L. Ed. 2nd 956 (2007) (quoting Grogan v. Garner, 498 U.S. 279,286, 111 S. Ct. 654, 112 L. Ed. 2d 755 (1991)

**Bankruptcy Court's Decision Has Created Multiply Parties and Multiply Cases**

The injustice was explained by Debtor/Plaintiff Pennington-Thurman in the Civil Rights Case 4:17-CV-01093 CDP which is currently on appeal with the Eighth Circuit Court of Appeals. (Case dismissed for res judicata) Appealed. Case No. 17-2041.

The cover-up for one Bankruptcy Judge is extensive, large and conspiratorially done by the Judicial System. My proof is in all cases filed in the State and Federal courts including the Eighth Circuit Court of Appeals that have been denied or dismissed and even dismissed for local rules which should be unconstitutional.

To get a full picture of what has happened since 2009 you have to read the "Motion For Declaratory Judgment, Declaration of Rights" filed with the Missouri Court of Appeals Eastern District December 22, 2016. (Case ED 105058) and in case 4:17-CV-01093 CDP filed in this Court. The Missouri Court of Appeals dismissed the Declaration of Rights as though I didn't have any rights and so did the district court.

For years, I have tried to explain to the courts the entire experience of fraud, conspiracy, misrepresentation and corruption. All explained in cases 0822-CC01654, 0922-CC08255, 0922-CC08256, Bankruptcy Case 09-46628-399, 4:15-CV-00381, Bankruptcy Appellate Panel 13-6023, Appeal to the U. S. Court of Appeals for the Eighth Circuit 15-3168, Appeal to U. S. Court of Appeals for the Eighth Circuit 13-3483, U. S. Supreme Court Case 14-6721 (Appeal from the Bankruptcy Court Denial to reopen case in 2013). U.S. Supreme Court Appeal of Bankruptcy Court's second denial to reopen bankruptcy case, U. S. Supreme Court Appeal

12

case No. 15-9470.

Then there is the Wrongful Foreclosure Case 1422-CC09976 filed by Plaintiff November 3, 2014 because Bank of America, N. A. was foreclosing on her property after the Compromise and Settlement was filed with the bankruptcy court. If the settlement were valid, there would be a breach of contract by Bank of America, N. A. (BANA)

BANA in privity with Federal Home Loan Mortgage Corporation evicted Plaintiff from her home on August 10, 2017, while there is a settlement agreement on file with the bankruptcy court. And there is the Unlawful Detainer Action 1522-CC00946-01 Appealed to Missouri Court of Appeals, ED 105058. The Motion to Reopen the Removal of the Unlawful Detainer, case 04:15-00381, Civil Rights Case 4:17-CV-01093 CDP, appealed as case 17-2014 and Appeal 17-2666, for case 04:15-CV-00381 RLW. (Denial to reopen the Unlawful Detainer Action removed to district court). Most of these cases were filed because the Bankruptcy Court did not recommend Plaintiff's bankruptcy case that included a "Compromise and Settlement" of the 2009 State Cases for final determination by an Article III Court. It was the actions of the State and Federal Courts in 2009, 2010 and 2011, when Debtor's bankruptcy case was open for 27months, that led her to believe she had no control over any proceedings, "Joint Motion to Dismiss" and a settlement agreement.

The conspiracy is so great you have to take time to read each case and read each order, judgment and memorandum filed under the name Wilma Pennington-Thurman in St. Louis Circuit Court, U. S. District Court, the U. S. Appellate Courts and the U. S. Supreme Court.

13

## Redress

Plaintiff Wilma Pennington-Thurman prays this court will give her the proper and legal respect to provide the determination from an Article III Court on the "Compromise and Settlement" the Bankruptcy Court Eastern District of Missouri decided to approve creating an atmosphere of bankruptcy fraud-conspiracy.

Plaintiff Wilma Pennington-Thurman prays for compensatory damages, punitive damages and the $150,000.00 (with interest) the courts so willingly took from Plaintiff without recommendation to the district court and any other redress the court deems just and proper.

Respectfully submitted,

Wilma M. Pennington-Thurman
P. O. Box 771201
St. Louis, Missouri   63177
314 566-2106